**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

CONSUELO M. LOPEZ,

      Plaintiff,

vs.                                                                             Civ. No. 02-1184 RHS

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

    1. This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand for a Rehearing, filed March 28, 2003 [Doc. No. 12]. The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") benefits. Plaintiff, age 52, alleges a disability which commenced December 30, 1999 due to depression, degenerative arthritis, pulmonary hypertension, aortic and mitral valve thickening with regurgitation, fatigue, shortness of breath, and pain.

    2. The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Ms. Lopez retained the ability to perform light work and, therefore, was not disabled. The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Ms. Lopez now seeks review of that final decision pursuant to 42 U.S.C. §405(g). At the time of the Secretary's or Commissioner's final decision, claimant was 51 years old, with a high school education and one year

of college. Her past relevant work was as a licensed practical nurse and nursery school attendant/day care worker.

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Ms. Lopez contends that the ALJ erred when she found that Plaintiff could perform light work and was therefore not disabled within the meaning of the Social Security Act. Plaintiff argues that the decision is not supported by substantial evidence and that incorrect legal standards were applied to this case.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Id. at 1486 (citing 42 U.S.C. §423 (d)(1)(A). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability application. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's

ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability date.  At step two, the ALJ determined that Plaintiff's obesity, hypertension, pulmonary hypertension, probable mild restrictive lung disease and early degenerative disease of the spine were severe impairments and her dysthemia[1] and posttraumatic stress disorder (PSTD)[2] were not severe impairments.  Tr. at 15.  The ALJ determined at step three that Plaintiff's impairments, considered separately or in combination, do not meet or equal an impairment listed in Appendix 1, subpart P, regulations No. 4, Tr. at 17, 21, which would render her presumptively disabled.  The ALJ concluded at step four that Plaintiff could not return to her past work.  Tr. at 21.

8. At step five, the burden shifts to the Commissioner to show that the claimant has a Residual Functional Capacity ("RFC") to do work in the national economy other than past relevant work.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various Residual Functional Capacity ("RFC") levels by incorporating administrative notice of occupational

---

[1]Dysthmia is a "chronically depressed mood that occurs for most of the day more days than not for at least 2 years."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 345 (4th ed. 1994)(DSM-IV).

[2]PTSD is " the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity;  or witnessing an event that involves death, injury, or a threat to the physical integrity of another person;  or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate.... The person's response to the event must involve intense fear, helplessness, or horror...." DSM-IV at 424.
.

publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

9. Nonexertional impairments include medically determinable impairments which affect the senses or the skin, postural and environmental limitations and mental impairments, which do not limit physical exertion. Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984) Plaintiff claims that her depression, post-traumatic stress disorder (PSTD), shortness of breath, fatigue and obesity are nonexertional impairments that decrease her ability to perform work related tasks and preclude the application of the grids in this case.

10. Plaintiff testified that she last worked in 1999 when she "took care of a little girl for six months." Tr. at 26. She stated that she was no longer able to work due to depression and fatigue, shortness of breath and arthritis. Tr. at 27. She testified that she could stand, sit, or lay down for ten to fifteen minutes before her back would start to hurt and she would need to change positions. Tr. at 27-28. She said that she could lift four or five pounds. Tr. at 28. She stated that she was five feet three inches tall and weighed 267 pounds. Tr. at 25.

**Depression and PSTD**

11. The ALJ found that Plaintiff's dysthemia and PTSD were not severe impairments at step two of the sequential evaluation. At the time she filed her application for benefits, Plaintiff was not being treated by a mental health specialist, however, Ms. Lopez had received prescription anti-depressant medication from her primary care physician, Dr. Ira Berkowitz. Tr at 197-217. His

progress notes indicate that Plaintiff "was doing well with depression" Tr. at 217 and her depression was "stable," Tr. at 211. The ALJ found that Dr. Berkowitz's notations showed that Plaintiff's "symptoms of depression were well controlled with medication." Tr. at 19.

12. On February 4, 2002, the Commissioner referred Plaintiff to Dr. Michael Gzascow for a consultative psychiatric examination. His report states that Ms. Lopez indicated that " she has had depression since the mid 80's and... also post traumatic stress disorder relative to a rape 33 years ago." Tr. at 242. He reported that she had worked for twenty years and that her last job was doing home day care in 2000. Id. Dr. Gzascow found that Ms. Lopez could relate to others but that this ability was compromised by her depressive isolation, withdrawal, low self-image and chronic pain/exhaustion/fatigue. He opined that she could understand and follow directions and attend to simple tasks. He noted that Ms. Lopez stated that she could not withstand the stress and pressures associated with work, but did not render his own opinion on that issue. Tr. at 245.
Dr. Gzascow diagnosed a mood disorder, a major depressive disorder, and PSTD. Tr. at 244.

13. In reaching her decision on the severity of Plaintiff's mental impairments, the ALJ also relied on the opinion expressed by Dr. Scott Walker, a non-examining State agency physician. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. - SSR 96-6p

14. Dr. Walker completed a Psychiatric Review Technique (PTF) form, which tracks the requirements of the relevant listing. The form requires that upon finding a mental impairment, the ALJ or medical advisor must determine the presence or absence of "certain medical findings which

have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2). The degree of functional loss resulting from the impairment must then be quantified, using the "Part B" criteria. <u>Robertson v. Chater</u>, 900 F.Supp. 1520, 1528-29 (D.Kan. 1995), (citing 20 C.F.R. § 404.1520a(b)(3) and <u>Cruse v. U.S. Dep't of Health & Hum. Serv.</u>, 49 F.3d 614, 617 (10th Cir. 1995)). The reviewing State agency physician compared the evidence concerning Plaintiff's mental impairment with the criteria described in the Listing of Impairments and found that Ms. Lopez's symptoms did not meet the specific diagnostic criteria for affective disorder-depressive syndrome. <u>Tr. at 175</u>. The Part B analysis was continued, however, and Dr. Walker concluded that Ms. Lopez had only mild difficulties in maintaining social functioning and maintaining concentration, persistence or pace and no restrictions of activities of daily living or episodes of decompensation. <u>Tr. at 182.</u> Dr. Walker concluded that plaintiff's mental impairment was "not severe"<u>Tr. at 172.</u> The ALJ agreed with this assessment <u>Tr. at 16</u>.

15. Plaintiff argues that the ALJ improperly discredited Dr. Gzacow's opinion regarding the severity of her mental impairment. The ALJ 's duty is to resolve conflicts in the record, and she may reject a physician's opinion if she gives specific, legitimate reasons for doing so. <u>Reyes v. Bowen</u>, 845 F.2d 242, 245 (10th Cir.1988); <u>Casias v. Sec'y of Health & Human Serv.</u>, 933 F.2d 799, 810 (10th Cir. 1991). The ALJ noted that Dr. Grascow repeated Plaintiff's statement that Plaintiff could not withstand work pressures. She observed that Dr. Grascow did not specifically state his own opinion regarding Plaintiff's ability to work. <u>Tr. at 17</u>. Plaintiff claims that this observation shows that the ALJ improperly rejected the methodology employed by the consultative psychiatrist.

16. According to Dr.Gzascow, Plaintiff functions at an average level of intelligence, she can understand and follow directions, and can attend to simple tasks. <u>Tr. at 245</u>. He found that she

6

showed no evidence of memory problems, thought disorder, delusions or hallucinations Tr. at 244-245. Dr. Gzascow noted that Plaintiff had a major depressive disorder and depression secondary to her general medical condition, as well as PTSD. Tr. at 244.

17. The treating physician, Dr. Berkowitz, the consultative examining physician, Dr. Grascow, and the reviewing physician, Dr. Walker, all believed that Plaintiff was depressed. Any conflict between the three reports involved the severity of her depression, not the diagnosis. Dr. Walker did not find that plaintiff's depression limited her activities in any significant way. Dr. Berkowitz believed that plaintiff responded well to antidepressants and that her condition did not require a referral to a mental health specialist. The ALJ weighed all the evidence and correctly found that claimant's mental impairment was not severe at step two because Plaintiff's depression had minimal effect on social and work-related functioning.

**Shortness of breath**

18. Ms. Lopez was referred for cardiovascular evaluation by the law firm which represented her in the Redux[3] litigation. Tr. at 129. Dr. Ignacio Garcia, a cardiologist, examined Plaintiff and found that she had a normal chest exam and EKG. An echocardiogram showed mild to moderate mitral regurgitation, mild pulmonary insufficiency, and mild pulmonary hypertension. Tr. at 129-132. Dr. Garcia subsequently performed a cardiac catheterization on April 12, 2000, which confirmed mild pulmonary hypertension. Tr. at 137. Another cardiac catherization was done by Dr. Charles Dahl on September 10, 2001, which reflected normal pulmonary artery pressure with moderate pulmonary hypertension with exercise. Tr. at 227.

19. Dr. Berkowitz referred Ms. Lopez to Dr. Charles Riley, a pulmonary disease specialist,

---

[3]Redux was one of the two drugs that comprised the fen-phen weight loss medication.

for evaluation of her shortness of breath. Tr. at 150. Dr. Riley performed a physical examination, pulmonary function studies and reviewed Plaintiff's echocardiogram and heart catherization reports. Tr at 150-162. The pulmonary function results were low normal or just beneath the lower limits of normal. Tr. at 153. The ALJ noted that they were well above those required by the §3.02 Listing for chronic obstructive pulmonary disease. Tr. at 17. Dr. Riley opined that Plaintiff's "shortness of breath is probably related to mild restrictive disease," that her pulmonary hypertension was "very mild and probably not unusual for someone living at this altitude," that she had recumbent hypoxemia (the oxygen saturation of her blood falls when she lies down) and that her exertional dyspnea was "probably proportional to her weight load which she must carry--at least twice her ideal body weight." Tr. at 152-153.

20. A consultative examination was performed by Dr. R. Brad Stamm on January 29, 2002. He found that she had mild to moderate pulmonary hypertension and doubted that it was a limiting factor. Tr. at 235. He found that "her disability is most likely related to her obesity" and that she was "unable to do physical work because of her poor physical conditioning and marked obesity." Id. Dr. Stamm completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on which he indicated that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and had no limitations on her ability to stand, walk or sit. He indicated that Ms. Lopez could never perform postural activities, including climbing, balancing, kneeling, crouching, crawling or stooping. Tr. at 237-238. These findings were mistakenly attributed to Dr. Levin (who was a recipient of the report rather than its author) in the ALJ's decision. Tr. at 15,17. This is a harmless error and does not affect the Court's analysis.

21. The ALJ discussed the pulmonary function studies in detail in her opinion and concluded

8

that the tests were done "for the purpose of obtaining evidence for a lawsuit," and not for the "treatment of any cardiac symptoms." Tr. at 18-19.[4] Although it is appropriate to give Dr. Garcia's opinions less weight because of the reason for Plaintiff's referral to the cardiologist, the referral to Dr. Riley, the pulmonary specialist, was apparently made by Dr. Berkowitz. Nevertheless, whether Ms. Lopez consulted Dr. Riley for the purpose of the litigation or to obtain medical treatment, Dr. Riley's test results were analyzed in detail by the ALJ and support her finding that Plaintiff's pulmonary impairment does not prevent her from performing light work.

**Obesity and fatigue**

22. Plaintiff alleges that her obesity and fatigue made the ALJ's application of the grids inappropriate. The record reflects that all of the physicians who examined plaintiff commented that she was obese. Tr. at 129,152,188-215,233,235.

23. The ALJ observed that Dr. Berkowitz repeatedly urged Ms. Lopez to exercise and that in May 2000 and July 2000 Plaintiff told him that she was walking for 45 minutes two to three times a week. Tr. at 19,citing 199-200. She also addressed Dr. Berkowitz's February 2001 notation that Plaintiff was "walking every day"(Tr. at 188) as support for her reasoning that if Plaintiff does not exercise "it is by choice, not because she is physically incapable of doing so."Tr. at 19.

24. The ALJ also discussed Dr. Stamm's opinion that Ms. Lopez could not perform physical work because of her obesity and poor physical conditioning. Tr. at 17. The ALJ is responsible for examining medical source opinions and making the determination on whether claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1). Because the disability decision is

---

[4] Page 19 of the transcript (which is page 7 of the ALJ's decision) was missing from the Court's copy. Counsel were notified and a replacement copy was located and inserted into the record.

reserved to the ALJ, she was not required to rely on Dr. Stamm's opinion on this issue. Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994).

25. Plaintiff's ability to walk on a regular basis provides support for the ALJ's finding that obesity and fatigue do not severely limit Plaintiff's ability to work. The ALJ noted that Ms. Lopez told Dr. Berkowitz and Dr. Garcia that she was doing childcare in 2000. Tr. at 19, At the time she told the physicians that she was working, her weight was over 260 pounds. Tr at 129,196,199, 206. Her past ability to work at that weight also supports the ALJ's finding that Ms. Lopez's obesity is not disabling . 20 C.F.R. §404.1520(a). The ALJ properly considered all the evidence and found that obesity and fatigue did not prevent Plaintiff from performing light work.

**Degenerative arthritis and pain**

26. Plaintiff asserts that the ALJ should have found nonexertional limitations related to arthritis and pain. She has arthritis in her shoulder, back, hands, and knee. The ALJ noted that Ms. Lopez had arthroscopic surgery for repair of a meniscus tear on March 30, 2001 and that on August 1, 2001, her spinal x-rays showed early degenerative disc disease and Grade I anterior spondylolisthesis. Tr. at 16. She has taken ibuprofen, Naprosyn, Tylenol, and Vioxx for her arthritic pain. Tr. at 214.

27. A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (citation omitted). Before the ALJ need even consider any subjective evidence of pain , the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. Id. (citing Luna v. Bowen, 834 F.2d 161, 163 (10th Cir. 1987); accord, Winfred v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). Plaintiff submitted objective evidence that

she suffered from arthritis. The ALJ was therefore required to consider all the relevant objective and subjective evidence and decide whether she believed the claimant's assertions of severe pain. Id.

28. When assessing credibility, the ALJ may look to objective indicators of pain, e.g., attempts to find relief, willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems. The ALJ may also consider daily activities, and the dosage, effectiveness and side effects of medication. Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (citation omitted).

29. Plaintiff's infrequent complaints to her treating physician, her use of primarily non-prescription pain medications, and her doctor's treatment notes are inconsistent with her allegations of disabling pain and tend to support the ALJ's credibility finding. "Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." Diaz v. Sec. of Health & Hum. Serv., 898 F.2d 774, 777 (10th Cir. 1990); cited in Winfrey v. Chater, 92 F.3d 1017, 1020 (10th Cir. 1996). There was substantial evidence that Ms. Lopez did not suffer from disabling pain and the ALJ, therefore, did not err in her credibility determination.

**Residual functional capacity**

30. The ALJ found that Ms. Lopez could not perform her past relevant work, but that she retained the ability to perform the demands of the full range of light work.[5] She applied the grids

---

[5]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986). Social Security Rule 83-10 points out that the minimal lifting required by light work (frequent lifting of up to 10 pounds and occasional lifting of no more than 20 pounds) can be accomplished in the majority of jobs involving light work with only occasional bending and stooping.

and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Tr at 20. In reaching that conclusion, the ALJ gave "great weight" to Dr. Stamm's opinion that Plaintiff had no limitations in sitting, standing or walking. Tr. at 17. She declined to accept his conclusions regarding her inability to climb, balance, kneel, crouch, crawl or stoop, reasoning that these conclusions are "not supported by clinical findings and are inconsistent with his opinion that she has no limitation of her abilities to walk or stand."Id.

31. Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. SSR 86-15.

32. The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Castellano v. Sec'y of HHS, 26 F.3d 1027, 1029 (10th Cir. 1994); see also Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) An ability to stoop occasionally is required in most occupations and a complete inability to stoop would significantly erode the occupational base, therefore application of the grids would be improper.

33. The ALJ rejected the postural limitations that Dr. Stamm found in his consultative examination because she found them to be unsupported by clinical findings. His narrative report mentions "poor physical conditioning" but does not address her alleged postural limitations. Tr. at 234-236. The record reflects that Dr. Berkowitz repeatedly urged to Plaintiff to exercise without placing specific limitations on any postural movement by Ms. Lopez. Tr. at 187-211. Despite his opinion of Plaintiff's limitations, Dr. Stamm recommended placement in "an aggressive physical

exercise program."Tr. at 235. These recommendations provide support for the ALJ's analysis of Dr. Stamm's opinion. The ALJ also discussed findings by the reviewing physicians who completed physical RFC assessments in December 2000 and April 2001 in which they opined that Ms. Lopez was capable of medium work and that she could occasionally stoop and crouch. Tr. at 164-71. This information from nonexamining physicians is entitled to less weight than the opinions of the treating and examining physicians, but it also provided support for the ALJ's finding that Ms. Lopez can perform postural activities required by light work.

34. The ALJ evaluated each of Plaintiff's nonexertional limitations and determined that her dysthemia, PSTD, obesity, fatigue, degenerative arthritis and pain do not reduce her capacity to perform light work. The ALJ's decision is based on substantial evidence and she applied the correct legal standards in finding Ms. Lopez not disabled as defined by the Social Security Act.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand for a Rehearing, filed March 28, 2003 [Doc. No. 12] is **DENIED** and this cause of action is **DISMISSED WITH PREJUDICE.**

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE